**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

|  |  |
|---|---|
| Malikie Innovations Ltd. and<br>Key Patent Innovations Ltd.,<br><br>                Plaintiffs,<br><br>     v.<br><br>MARA Holdings, Inc. (f/k/a Marathon Digital<br>Holdings, Inc.)<br><br>                Defendant. | Case No. 7:25-cv-00222 |

**DEFENDANT'S OBJECTIONS TO THE CLAIM CONSTRUCTION ORDER
OF THE UNITED STATES MAGISTRATE JUDGE**

**Table of Contents**

I.      INTRODUCTION ........................................................................................................... 1

II.     DISPUTED TERMS ..................................................................................................... 1

        A.      "Montgomery-style reduction" ('286 Patent) .................................................. 1

        B.      "perform a replacement of a least significant word of the operand" ('286 Patent) ...... 2

        C.      "perform a cancellation thereof" ('286 Patent) ............................................... 5

        D.      "finite field operation"  ('062 Patent; '960 Patent) ........................................ 5

        E.      "reduced result" ('062 Patent; '960 Patent) .................................................... 6

        F.      "unreduced result" ('062 Patent; '960 Patent) ................................................ 6

        G.      "the electronic message omits a public key of a signer"  ('370 Patent) ...................... 6

        H.      "verifying that the second elliptic curve point Q represents the public key of the
                signer" ('827 Patent) ...................................................................................... 7

        I.      "random number generator" ('961 Patent) ...................................................... 9

        J.      "seed" ('961 Patent) ....................................................................................... 10

        K.      "The method of claim 1 wherein if said output is rejected, said output is incremented
                by a deterministic function and a hash function is performed on said incremented
                output to produce a new output; a determination being made as to whether said new
                output is acceptable as a key." ...................................................................... 10

III.    CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BASF Agro B.V.* v. *Makhteshim Agan of N. Am., Inc.*,
519 Fed. Appx. 1008 (Fed. Cir. 2013) ............................................................................... 11

*Brookhill-Wilk 1, LLC.* v. *Intuitive Surgical, Inc.*,
334 F.3d 1294 (Fed. Cir. 2003) ....................................................................................... 10

*Corning Glass Works* v. *Sumitomo Elec. U.S.A., Inc.*,
868 F.2d 1251 (Fed. Cir. 1989) ......................................................................................... 1

*C.R. Bard, Inc.* v. *U.S. Surgical Corp.*,
388 F.3d 858, 863 (Fed. Cir. 2004) ................................................................................... 8

*General Elec. Co.* v. *Nintendo Co., Ltd.*,
179 F.3d 1350 (Fed. Cir. 1999) ......................................................................................... 1

*Markman* v. *Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) ............................................................................................. 4

*Monsanto Co.* v. *Syngenta Seeds, Inc.*,
503 F.3d 1352 (Fed. Cir. 2007) ....................................................................................... 10

*O2 Micro Int'l Ltd.* v. *Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ..................................................................................... 3, 8

**Statutes**

35 U.S.C. § 112(4) ............................................................................................................... 11

**Other Authorities**

Fed. R. Civ. P. 72(a) .............................................................................................................. 1

## I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 72(a), defendant MARA Holdings, Inc. ("MARA") respectfully submits these objections to the Magistrate Judge's March 12, 2026 Claim Construction Order and Memorandum of Support Thereof (Dkt. No. 80, the "Order") regarding the disputed terms of United States Patent Nos. 7,372,960, 7,372,961, 8,532,286, 8,666,062, 8,788,827, and 10,284,370.

## II.    DISPUTED TERMS

### A.     "Montgomery-style reduction" ('286 Patent)

| MARA's Proposed Construction | Magistrate Judge's Recommendation |
|---|---|
| This term is limiting and means "reduction that proceeds by clearing the least significant portions of an unreduced operand and leaving the remainder in the more significant portions" | This term appears only in the preamble and is not limiting. |

For the reasons set forth in its prior briefing (including the evidence cited therein), which is incorporated by reference, MARA objects to the Order's determination that this term is not limiting.  *See* Dkt. No. 52 at 10-11; Dkt. No. 59 at 1-3.

The Order determined that "Montgomery-style reduction" is not limiting because the preamble "is [not] essential to understand limitations or terms in the claim body," and only "states the intended use or purpose of the invention."  Dkt. No. 80 at 15-16.  However, whether the preamble is not limiting because it only states an intended use or purpose "can be resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim."  *Corning Glass Works* v. *Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989); *see also General Elec. Co.* v. *Nintendo Co., Ltd.*, 179 F.3d 1350, 1361 (Fed. Cir. 1999) (citing *Corning*, 868 F.2d at 1257).  Here, the specification and prosecution history clearly and repeatedly assert that the purported invention is directed to a particular improvement to Montgomery-style reduction, not a general improvement to any type of reduction.  Dkt. No. 52 at 10-11.  Notably, the Order did not address or analyze the

1

specification or prosecution history to determine what the inventors actually invented and intended to encompass by the claim, as required by Federal Circuit law.  Dkt. No. 80 at 16.  For this reason alone, the Order should be modified and MARA's construction that this term is limiting should be adopted.

The Order further determined that "the claim body recites a structurally complete invention" and "[t]here is nothing in the preamble that helps a POSITA understand the steps in the body of the claim."  Dkt. No. 80 at 16-17.  However, "Montgomery style reduction" describes *how* the claimed method must proceed—by reducing from below instead of reducing from above.  Dkt. No. 59 at 2; *see also* Dkt. No. 53 at 7 (admitting that the specification describes Montgomery reduction as "reduc[ing] from below.").  Under the construction adopted by the Order, the claim body does not reflect what was purportedly invented,[1] which as Plaintiffs concede, is "an 'alternative way' or 'modification' of conventional Montgomery-style reduction."  Dkt. No. 53 at 6.

B.    **"perform a replacement of a least significant word of the operand" ('286 Patent)**

| MARA's Proposed Construction | Magistrate Judge's Recommendation |
| --- | --- |
| "add a modular equivalent of the operand's least significant word to the more significant words of the operand such that the result can be shifted down to drop the least significant word" | Plain-and-ordinary meaning. |

For the reasons set forth in its prior briefing (including the evidence cited therein), which are incorporated by reference, MARA objects to the Order's determination that this term should be accorded its plain and ordinary meaning.  *See* Dkt. No. 52 at 11-14; Dkt. No. 59 at 3-6.

---

[1] Because the Order also does not adopt MARA's proposed construction for "perform a replacement of a least significant word of the operand," none of the claim limitations as construed reflect what was purportedly invented (*i.e.*, a Montgomery-style reduction), which "reduces from below."

The Order held that the presumption that this term should be accorded its plain and ordinary meaning should apply for several reasons. First, the Order found that "the defendant does not expressly allege lexicography or disclaimer." Dkt. No. 80 at 22; *see also id.* at 24 ("[T]he defendant has not shown that the patentee used ["replacement"] in a manner that is inconsistent with [the plain] meaning."). However, MARA demonstrated that the term "replacement" was not previously used in the art and instead was a term the inventors used to characterize their method of Montgomery-style reduction. Dkt. No. 52 at 12 (citing Dkt. No. 52-A ¶¶ 51-54). In other words, the term "replacement" in the context of the '286 Patent claims did not have a known plain and ordinary meaning and thus requires construction. Indeed, Plaintiffs likewise acknowledged that the term did not have a known plain and ordinary meaning and accordingly proposed a specific construction.[2] *See* Dkt. 53 at 8. The Order's "plain-and-ordinary meaning" determination fails to resolve a material dispute between the parties concerning the meaning of the term "replacement." *O2 Micro Int'l Ltd.* v. *Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").

Second, the Order found that "defendant's proposed construction improperly limits the claim term to an embodiment" described in the specification, "where the modular equivalent of $a_0$ (*i.e.*, $a_0 \times n' \times 2^w$) is added to the remaining words." Dkt. No. 80 at 23. This is incorrect. As explained in MARA's reply brief, both experts agree that MARA's proposed construction does not limit the claim scope to a particular embodiment and instead covers multiple alternative ways of performing a Montgomery-style reduction replacement that are described in the specification.

---

[2] Similarly, while the term "cancellation" has a known meaning in general, the parties agreed that "perform a cancellation thereof" has a more specific meaning in the context of the '286 Patent, as reflected in the Order. *See* Dkt. No. 80 at 69.

Dkt. No. 59 at 5; *see* Dkt. No. 59-A ¶¶ 6-17 (explaining the alternative methods). Specifically, Malikie's expert opined in his declaration that the embodiment in the specification describes using a shifted version of the reduction value. Dkt. No. 53-1 at ¶ 73; *see also* Dkt. No. 59-B at 49:6-10 (confirming the same). Then, during deposition, Malikie's expert conceded that MARA's construction is not "limited to using shifted reduction value." Dkt. No. 59-B at 49:21-50:1; *see also id.* at 52:25-53:7 ("MARA's construction says modular equivalent, and that includes the shifted reduction value. It might also include other things.").

Relatedly, the Order found that because Claim 2 "expressly recites that the reduction value may be a shifted version of n'" and "Claim 1 is broader than dependent Claim 2," "Claim 1 is not limited to using a shifted version of the reduction value, as required by the defendant's proposed construction." Dkt. No. 80 at 22-23. However, MARA's proposed construction does not limit Claim 1 to using a shifted version of the reduction value. Dkt. No. 59 at 5 (citing Dkt. No. 59-A ¶¶ 6-11). MARA's expert explained, and Plaintiffs' expert did not dispute, that reduction values other than the shifted or signed versions of n' may be used and fall within the scope of MARA's proposed construction. Dkt. No. 59-A ¶¶ 8-9.

Third, the Order found that "the defendant's construction improperly rewrites the claim language" because "Claim 1 only requires any reduction value as opposed to a particular reduction value." Dkt. No. 80 at 23; *see also id*. at 24 (determining that MARA's proposed construction "improperly proposes a specific way of 'performing a replacement of a least significant word.'"). However, "[c]laims must be read in view of the specification." *Markman* v. *Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). Here, the specification is clear that performing a "replacement" in the context of the claims requires replacing the LSW with its modular equivalent. *See also* Dkt. No. 59 at 3-5 (explaining that replacing the LSW with a value that is not its modular

4

equivalent "would not result in reduction").    Accordingly, MARA's construction does not improperly limit the claims as the Order determined, but instead reflects the fact that the '286 Patent is directed to a specific way of performing a Montgomery-style reduction, which Plaintiffs admit the claims are directed to.  Dkt. No. 53 at 6 ("[T]he claimed method is an 'alternative way' or 'modification' of conventional Montgomery-style reduction").

### C.    "perform a cancellation thereof" ('286 Patent)

| MARA's Proposed Construction | Magistrate Judge's Recommendation |
|---|---|
| "add a multiple of the modulus to the operand such that the least significant word of the result is zero and the result can be shifted down to drop the least significant word" | "add a multiple of the modulus to the operand to zero out the least significant word of the operand" |

MARA does not object to the Magistrate Judge's construction of this term.

### D.    "finite field operation"  ('062 Patent; '960 Patent)

| MARA's Proposed Construction | Magistrate Judge's Recommendation |
|---|---|
| "operation where each operand is a finite field element" | "an operation in a finite field" |

For the reasons set forth in its prior briefing (including the evidence cited therein), which are incorporated by reference, MARA objects to the Order's construction that this term should be construed to mean "an operation in a finite field."  *See* Dkt. No. 52 at 16-18; Dkt. No. 59 at 7-8.

The Parties' dispute is clear: Plaintiffs argue that a "finite field operation" includes elliptic curve operations, which are operations on elliptic curve points.  In contrast, MARA contends that "finite field operations" are operations on finite field elements.  MARA's construction is consistent with the intended purpose set forth in the preambles of the asserted claims (claim 1 of the '062 Patent; claim 3 of the '960 Patent), which state that the claimed method is "performing a finite field operation on elements of a finite field."  MARA's construction is also supported by the specifications of the '062 and '960 Patents, which make clear that "finite field operations" are distinct from "elliptic curve operations."  *See e.g.*, '062 Patent at Fig. 4, 6:54-56 ("The protocols

5

210 are configured to treat the ***elliptic curve operations and finite field operations*** abstractly"); *see also* Dkt. No. 59 at 7-8.

The Order nonetheless determined that the claimed "finite field operation" does not "exclude[] operations on elliptic curve points" because "elliptic curve operations involve conducting finite field operations." Dkt. No. 80 at 32. That an elliptic curve operation can involve conducting a finite field operation does not mean that the opposite is true (*i.e.*, that finite field operations include elliptic curve operations). *See* Dkt. No. 53-A at ¶¶ 67-69. Accordingly, the Order's finding that "elliptic curve operations involve conducting finite field operations" is not relevant to the meaning of "finite field operations" and does not support the recommended construction.

### E.    "reduced result" ('062 Patent; '960 Patent)

| MARA's Proposed Construction | Magistrate Judge's Recommendation |
|---|---|
| No construction needed. Plain and ordinary meaning | Plain-and-ordinary meaning. |

MARA does not object to the Magistrate Judge's construction of this term.

### F.    "unreduced result" ('062 Patent; '960 Patent)

| MARA's Proposed Construction | Magistrate Judge's Recommendation |
|---|---|
| "result without any reduction to a specific finite field or wordsize reduction" | "result without any reduction to a specific finite field or wordsize reduction" |

MARA does not object to the Magistrate Judge's construction of this term.

### G.    "the electronic message omits a public key of a signer"  ('370 Patent)

| MARA's Proposed Construction | Magistrate Judge's Recommendation |
|---|---|
| "the electronic message does not include any representation of the public key of the signer" | Plain-and-ordinary meaning. |

For the reasons set forth in its prior briefing (including the evidence cited therein), which are incorporated by reference, MARA objects to the Order's determination that this term should be accorded its plain-and-ordinary meaning. *See* Dkt. No. 52 at 25-26; Dkt. No. 59 at 10-11.

6

The Order contains several erroneous determinations that warrant adopting MARA's proposed construction. First, the Order determined that MARA "does not identify any disclosure in the specification" for its interpretation. Dkt. No. 80 at 43. But MARA explained that "the specification confirms that the purpose of the specific equation is to be able to recover the public key Q from only the signature" such that including a representation of the public key would be inconsistent with the purpose of the claimed method. Dkt. No. 52 at 25. Second, the Order determined that "the specification expressly describes that a 'compact version' of public key Q could be communicated instead of public key Q. '370 Patent at 16:22–27. [And] because 'compact version' of public key Q is a representation of public key Q, the defendant's proposed construction improperly excludes this embodiment." Dkt. No. 80 at 43. As previously explained, however, the cited embodiment is not relevant to the claims, which are directed to recovering the public key Q using a specific recovery equation, not recovering Q from a compact version of Q sent with the message. Dkt. No. 59 at 14. Third, the Order determined that "under the defendant's proposed construction, signature (r, s) would have to be omitted as it is a representation of a public key, which would vitiate the claim language that requires receiving signature (r, s)," Dkt. No. 80 at 44. This is incorrect. As set forth in MARA's briefing, the claim language explicitly states that the signature (r,s) is sent with the message and therefore cannot be omitted. As such, the signature (r,s) is clearly not a representation of the public key Q. Dkt. No. 59 at 14.

### H. "verifying that the second elliptic curve point Q represents the public key of the signer" ('827 Patent)

| MARA's Proposed Construction | Magistrate Judge's Recommendation |
|---|---|
| "verifying that the second elliptic curve point Q represents the second elliptic curve point Q" | Plain-and-ordinary meaning. |

For the reasons set forth in its prior briefing (including the evidence cited therein), which are incorporated by reference, MARA objects to the Order's determination that this term should

7

be accorded its plain-and-ordinary meaning. *See* Dkt. No. 52 at 26-27; Dkt. No. 59 at 12.

MARA's proposed construction accurately reflects the plain and ordinary meaning of claim 2 because the antecedent basis for "the public key of the signer" in claim 2 is "the second elliptic curve point Q." Dkt. No. 52 at 26-27. The Order, relying on *C.R. Bard.*, nonetheless determined that "even if the defendant's proposed construction accurately reflects the meaning of this claim term, it is unnecessary to 'import' language from Claim 1 into Claim 2." Dkt. No. 80 at 47 (citing *C.R. Bard*, *Inc.* v. *U.S. Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004)). But *C.R. Bard* is inapposite. There, the court "question[ed] the need to consult a dictionary to determine the meaning of such ***well-known terms***." 388 F.3d at 863 (emphasis added). MARA is not consulting a dictionary to determine the meaning of well-known terms, but instead proposed a construction that reflects the plain and ordinary meaning of claim 2 in the context of claim 1 from which it depends.

The Order's "plain-and-ordinary meaning" determination also fails to resolve a material dispute between the parties concerning what is required to perform the "verifying" step of claim 2. *O2 Micro Int'l Ltd.* v. *Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute."). As noted above, MARA's construction reflects its understanding of the plain and ordinary meaning of claim 2 as written. In contrast, Plaintiffs asserted in their claim construction briefing that the plain and ordinary meaning of claim 2 requires "verifying that the computed Q represents the assigned value of the public key Q." Dkt. 65 at 11. As such, adopting the Order's plain and ordinary meaning construction fails to provide clarification on the plain and ordinary definition.[3]

---

[3] There is no support in the plain language of the claims or the specification for Plaintiffs' interpretation of the plain and ordinary meaning.

### I.    "random number generator" ('961 Patent)

| MARA's Proposed Construction | Magistrate Judge's Recommendation |
| --- | --- |
| "a system or algorithm that generates a random value" | "a system or algorithm that generates values according to a uniform random probability distribution" |

For the reasons set forth in its prior briefing (including the evidence cited therein), which are incorporated by reference, MARA objects to the Order's construction that this term should be construed to mean "a system or algorithm that generates values according to a uniform random probability distribution." *See* Dkt. No. 52 at 28-32; Dkt. No. 59 at 12-15.

The Parties' dispute is clear: Plaintiffs argue that the term should include the generation of pseudorandom numbers; whereas Defendant argues that the term, construed in the context of cryptography, refers to the generation of random, unpredictable numbers. *See* Dkt. No. 59 at 12. The Order improperly concluded that the "meaning of 'random number generator' includes pseudorandom number generators." Dkt. No. 80 at 54. Notably, the Order failed to give proper weight to the intrinsic record, which clearly distinguishes between "random number generators" and "deterministic functions" (*i.e.*, pseudorandom number generators). *See e.g.*, Dkt. No. 52 at 29-30.

Instead, the Order gave undue weight and/or misinterpreted the extrinsic evidence. First, the Order relied on the Handbook of Applied Cryptography's statement that "random numbers" include "pseudorandom numbers which are ***unpredictable*** to an adversary," but incorrectly concluded that "PRNGs can have unpredictable outputs" even if they do not use truly random seeds. Dkt. No. 80 at 55, 57; *see also* Dkt. No. 59 at 12-15 (explaining that PRNGs output predictable values unless they use a truly random input seed). Second, the Order relied on portions of a textbook edited by MARA's expert that was published in 2009, which is eight years after the filing of the application that became the '961 Patent. Dkt. No. 80 at 55-56 (citing Dkt. No. 53. Ex.

9

12).  This was erroneous because evidence used for claim construction must be contemporaneous with the time of invention.  *Brookhill-Wilk 1, LLC.* v. *Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003) (refusing to consider dictionary and treatise evidence regarding ordinary meaning because the sources were not contemporaneous).

### J.      "seed" ('961 Patent)

| MARA's Proposed Construction | Magistrate Judge's Recommendation |
|---|---|
| "a random value that is used as the starting value for a cryptographic key generation function" | Plain-and-ordinary meaning. |

For the reasons set forth in its prior briefing (including the evidence cited therein), which are incorporated by reference, MARA objects to the Order's determination that this term should be accorded its "plain and ordinary meaning," "include[ing] pseudorandom numbers." *See* Dkt. No. 52 at 32-33; Dkt. No. 59 at 15-16.

Like the dispute discussed above with respect to the term "random number generator," the Parties' dispute whether the term "seed" includes pseudorandom numbers.  Thus, the Order's construction of the term "seed" should be modified for substantially the same reasons discussed above for "random number generator."

### K.      "The method of claim 1 wherein if said output is rejected, said output is incremented by a deterministic function and a hash function is performed on said incremented output to produce a new output; a determination being made as to whether said new output is acceptable as a key."

| MARA's Proposed Construction | Magistrate Judge's Recommendation |
|---|---|
| Indefinite. | Plain-and-ordinary meaning. |

For the reasons set forth in its prior briefing (including the evidence cited therein), which are incorporated by reference, MARA objects to the Order's determination that this term is not indefinite.  *See* Dkt. No. 52 at 33-35; Dkt. No. 59 at 16-17.

Claim 7 depends from claim 1, and therefore requires performing all the steps of claim 1 in addition to the steps in claim 7.  *Monsanto Co.* v. *Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359

(Fed. Cir. 2007); *see also* 35 U.S.C. § 112(4). As MARA explained, a POSITA would not know with reasonable certainty how to perform claim 1's limitation of "repeating said method" in conjunction with performing the additional method steps in claim 7 if output H(SV) is rejected.[4] *See* Dkt. No. 52 at 34. The Order's conclusion that claim 7 was nevertheless not indefinite was premised solely on its determination that the "deterministic function" recited in claim 7 is a "particular" application of an "RNG" that narrows the scope of claim 1, as opposed to being an additional step that must be performed. Dkt. No. 80 at 68. There is, however, no support in the intrinsic record to support the Order's conclusion in this regard. *See* Dkt. 52-8 at Fig. 3 (illustrating "Output RNG" as distinct from "Increment" using a deterministic function). Notably, the Order does not cite any evidence, intrinsic or extrinsic, to support its determination that a "deterministic function" is a particular type of RNG.[5] Dkt. No. 80 at 67-68.

In addition to lacking support in the intrinsic record, the Order's determination that the "deterministic function" in claim 7 is a particular application of an "RNG" in claim 1 is inconsistent with the basis for the Order's recommended construction of "random number generator." Specifically, in support of the "random number generator" construction, the Order determined that "Claim 7 does ***not*** use 'deterministic' to describe a type of 'random number generator,' but rather to describe ***another*** 'function.'" Dkt. No. 80 at 56 (emphasis added). Yet to support the determination that claim 7 is not indefinite, the Order asserted the exact opposite—

---

[4] Plaintiffs did not dispute in claim construction briefing that claim 7 is indefinite if the claim requires "repeating said method" of claim 1 and performing the additional steps of claim 7, as MARA contends.

[5] Plaintiffs likewise failed to identify intrinsic evidence to support its interpretation, and instead relied on expert testimony. Dkt. 53 at 33; Dkt. 65 at 16-17. But expert testimony cannot support a construction that is inconsistent with the intrinsic record. *BASF Agro B.V.* v. *Makhteshim Agan of N. Am., Inc.*, 519 Fed. Appx. 1008, 1018 (Fed. Cir. 2013) ("Extrinsic evidence cannot vary the terms of the claims or otherwise contradict the intrinsic record. Even testimony from a qualified expert has little probative value if it is inconsistent with the intrinsic record.").

11

that a "deterministic function" is a type of "random number generator." *Id*. at 68 ("Claim 7 requires using a particular RNG ("deterministic function")…."). To the extent the Order correctly construed the term "random number generator," the basis for its construction for claim 7 is incorrect and should be reversed. Accordingly, the recommended construction for claim 7 should be modified and claim 7 should be held to be indefinite.

## III.   CONCLUSION

MARA respectfully requests that the court sustain its objections to the Order for the terms addressed in Sections II.A-B, II.D, and II.G-K above and adopt MARA's proposed constructions.

Dated: March 26, 2026

Respectfully Submitted,

/s/ Catherine Nyarady
Elizabeth S. Weiswasser
Catherine Nyarady
Tom Yu
Thomas Macchio
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Sixth Avenue
New York, NY 10019
Telephone: (212) 373-3000

Christopher M. Pepe
W. Sutton Ansley
Eric C. Westerhold
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street NW
Washington, DC 20006
Telephone: (202) 223-7300

Steve Wingard
State Bar No. 00788694
swingard@scottdoug.com
Robert P. Earle
State Bar No. 241245566
rearle@scottdoug.com
Stephen L. Burbank
State Bar No. 24109672
sburbank@scottdoug.com
Scott Douglass & McConnico LLP
303 Colorado Street, Suite 2400
Austin, TX 78701-3234
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

*Counsel for Defendant MARA Holdings, Inc.*

13

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record are being served with a copy of the foregoing

**DEFENDANT'S OBJECTIONS TO THE CLAIM CONSTRUCTION ORDER**

**OF THE UNITED STATES MAGISTRATE JUDGE** via the Court's CM/ECF system on

March 26, 2026.


                                                    */s/ Catherine Nyarady*
                                                    Catherine Nyarady

14