IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

|  |  |  |
|---|---|---|
| MALIKIE INNOVATIONS LTD., and<br>KEY PATENT INNOVATIONS LTD.<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MARA HOLDINGS, INC. (F/K/A<br>MARATHON DIGITAL HOLDINGS, INC.)<br><br>　　　　Defendant. | | CASE NO. 7:25-CV-00222-DC-DTG<br><br>JURY TRIAL DEMANDED |

**<u>PLAINTIFFS' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE CLAIM
CONSTRUCTION ORDER OF THE UNITED STATES MAGISTRATE JUDGE</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   DISPUTED TERMS.............................................................................................. 1

    A.    "Montgomery-style reduction" ('286 Patent) .................................................. 1

    B.    "perform a replacement of a least significant word of the operand" ('286 Patent) ............................................................................................................. 2

    C.    "perform a cancellation thereof" ('286 Patent)................................................ 4

    D.    "finite field operation" ('062 Patent; '960 Patent)........................................... 5

    E.    "reduced result" ('062 Patent; '960 Patent) ..................................................... 5

    F.    "unreduced result" ('062 Patent; '960 Patent) ................................................. 5

    G.    "the electronic message omits a public key of a signer" ('370 patent)............. 6

    H.    "verifying that the second elliptic curve point Q represents the public key of the signer" ('827 patent) ................................................................................ 7

    I.    "random number generator" ('961 patent)........................................................ 8

    J.    "seed" ('961 patent) ......................................................................................... 9

    K.    "The method of claim 1 wherein if said output is rejected, said output is incremented by a deterministic function and a hash function is performed on said incremented output to produce a new output; a determination being made as to whether said new output is acceptable as a key." ('961 patent)............... 9

III.  CONCLUSION..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
618 F.3d 1354 (2010)............................................................................................2

*Arctic Cat Inc. v. GEP Power Prods., Inc.*,
919 F.3d 1320 (Fed. Cir. 2019)............................................................................1

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
388 F.3d 858 (Fed. Cir. 2004)..............................................................................7

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002)...........................................................................1, 2

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*,
868 F.2d 1251 (Fed. Cir. 1989)............................................................................2

*General Elec. Co. v. Nintendo Co., Ltd.*,
179 F.3d 1350 (Fed. Cir. 1999)............................................................................2

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)..............................................................................4

*Markman* v. *Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995)................................................................................4

*O2 Micro Int'l Ltd.* v. *Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)..........................................................................3, 7

*Thorner v. Sony Computer Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)............................................................................3

**Statutes**

28 U.S.C. § 636(b)(1) ...........................................................................................1

**Rules**

Fed. R. Civ. P. 72(a) .............................................................................................1

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1), Plaintiffs Malikie Innovations Ltd. and Key Patent Innovations Ltd. ("Plaintiffs") respectfully submit the following response to Defendant MARA Holdings, Inc.'s ("Defendant") Objections to the Claim Construction Order of the United States Magistrate Judge (Dkt. 86; "Objections"), regarding certain terms construed in the Court's Claim Construction Order and Memorandum in Support Thereof (Dkt. 80; "Order").

## II.    DISPUTED TERMS

### A.    "Montgomery-style reduction" ('286 Patent)

| Defendant's Proposed Construction | Court's Construction |
|---|---|
| "reduction that proceeds by clearing the least significant portions of an unreduced operand and leaving the remainder in the more significant portions" | This term appears only in the preamble and is not limiting. |

The Court correctly held that the preamble is not limiting under the relevant legal framework.  Dkt. 80 at 15-16 (analyzing the *Catalina*[1] guideposts); s*ee* Dkt. 53 at 3-7; Dkt. 65 at 1-2.  The Court held that Defendant failed to show that any of the hallmarks of a limiting preamble were present, *i.e.*, that the preamble provides antecedent basis for a term in the claim's body, recites "additional structure or steps underscored as important by the specification," or was relied on "during prosecution to distinguish the claimed invention from the prior art."  Dkt. 80 at 16 (quoting *Catalina*, 289 F.3d at 808).  The Court's analysis was proper under the law.  *See Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1327-29 (Fed. Cir. 2019) (discussing and applying *Catalina*).  Defendant ignores this part of the Order (as it did Plaintiffs' similar arguments) and recycles old arguments the court has correctly rejected.

---

[1] *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

1

Defendant's claim that the Court erred by failing to "address or analyze the specification or prosecution history to determine what the inventors actually invented and intended to encompass by the claim" is wrong. Dkt. 86 at 1-2. The Court considered Defendant's arguments under *Corning Glass*[2] and *General Electric*[3] in light of the specification and prosecution history and rejected them. Dkt. 80 at 10-11 (citing '286 Patent and '286 Patent File History), 13-14, 16. The Court agreed with Plaintiffs that the preamble is non-limiting because it "simply states the intended use or purpose of the invention" while "the claim body recites a structurally complete invention." *Id.* at 16. The Court's analysis correctly applies the governing legal principles. *Id.* at 16-17; s*ee* Dkt. 53 at 3-7; Dkt. 65 at 1-2.

The Court also rightly rejected Defendant's argument that the preamble "describes *how* the claimed method must proceed." Dkt. 86 at 2. The Court correctly determined that "the claim body recites all steps necessary to perform the claimed method; namely, … the steps of 'obtaining,' 'computing,' and 'outputting,'" and that "[t]he defendant does not identify any missing steps." Defendant still identifies no missing steps. *See* Dkt. 86 at 2. There is no error in the Court's determination that the **body** of the claim, not the preamble, recites how the method must proceed. *See Catalina*, 289 F.3d at 808; *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (2010).

**B.     "perform a replacement of a least significant word of the operand" ('286 Patent)**

| Defendant's Construction | Court's Construction |
|---|---|
| "add a modular equivalent of the operand's least significant word to the more significant words of the operand such that the result can be shifted down to drop the least significant word" | Plain-and-ordinary meaning. |

Defendant's objections identify no errors in the Court's construction. First, Defendant does

[2] *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989).

[3] *General Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350 (Fed. Cir. 1999)

not dispute that it "d[id] not expressly allege lexicography or disclaimer." Dkt. 86 at 3 (quoting

Dkt. 80 at 22). Nor does Defendant dispute that absent lexicography or disclaimer, this term must

be given its plain and ordinary meaning, which the Court did. *See* Dkt. 80 at 6, 22 (citing *Thorner*

*v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). Defendant seems to argue

that its proposed construction *is* the plain and ordinary meaning of this term (rather than

lexicography), and, as such, the Court left a dispute about what the term's plain and ordinary

meaning is unresolved. Dkt. 86 at 3 (citing *O2 Micro Int'l Ltd.* v. *Beyond Innovation Tech. Co.*,

521 F.3d 1351, 1360 (Fed. Cir. 2008)). Not so. After holding that lexicography and disclaimer

do not apply, the Court rejected Defendant's construction four different ways (*i.e.*, because it (1)

is improperly limited to an embodiment in the specification, (2) improperly rewrites claim

language, (3) violates the doctrine of claim differentiation, and (4) is unduly narrow). Dkt. 80 at

22-24. The Court also made clear that the plain English meaning of the term applies and rejected

Defendant's arguments to the contrary. *Id*. at 24.[4] The Court left no material dispute unresolved.

Second, there is no error in the Court's conclusion that Defendant's construction

improperly limits the claim to an embodiment. Defendant argues its construction is not limited to

using a "shifted version of the reduction value," but ignores the Court's reasoning that Defendant's

construction "limits the claim term to this embodiment *because [it] requires adding 'a modular*

*equivalent of the operand's least significant word[.]'*" Dkt. 80 at 23; *see also id*. ("The defendant's

proposed construction improperly rewrites the claim language to require adding a specific type of

reduction value, *i.e.*, adding a 'modular equivalent of the operand's least significant word.'").

---

[4] Defendant's assertion that Plaintiffs "acknowledged" that "replacement"—the only disputed word in this term—"did not have a known plain and ordinary meaning and accordingly proposed a specific construction" is false and misleading. Dkt. 86 at 3. Plaintiffs have consistently argued that "replacement" has its plan and ordinary English meaning. Dkt. 53 at 8-9; Dkt. 65 at 3.

Defendant's expert admitted that the modular equivalence required by Defendant's construction comes from the way the reduction value in that particular embodiment is computed, *i.e.*, $n' = 2^{-w}$ mod n.  *See* Dkt. 80 at 22; Dkt. 65 at 3-4 (citing Dkt. 53-5 at 56:5-57:12).  As the Court also held, claim 2 recites that type of reduction value ($n' = 2^{-w}$ mod n), making claim 1 broader.  Dkt. 80 at 23-24 (applying the doctrine of claim differentiation).  Because claim 1 does not require the specific type of reduction required by Defendant's construction, the Court correctly rejected Defendant's construction.  Dkt. 80 at 23-24.[5]

Third, it was not error for the Court to reject Defendant's rewriting of the claim.  While "[c]laims must be read in view of the specification," Dkt. 86 at 4 (quoting *Markman* v. *Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)), it is well-settled that "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited," *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004), which Defendant did not show.  Dkt. 80 at 23-24.

### C.    "perform a cancellation thereof" ('286 Patent)

| Defendant's Construction | Court's Construction |
|---|---|
| "add a multiple of the modulus to the operand such that the least significant word of the result is zero and the result can be shifted down to drop the least significant word" | "add a multiple of the modulus to the operand to zero out the least significant word of the operand" |

MARA did not object to the Court's construction of this term.

---

[5] Even if Defendant's construction is not limited to a "*shifted*" reduction value, the Court's construction is not erroneous.  The modular equivalence required by Defendant's construction limits the claim to embodiments using a reduction value of the type $n'=2^{-w}$ mod n (as explained above), which is recited in claim 2 and not required by claim 1.  The Court's reasoning still applies.

### D.    "finite field operation" ('062 Patent; '960 Patent)

| Defendant's Construction | Court's Construction |
|---|---|
| "operation where each operand is a finite field element" | "an operation in a finite field" |

The Court's construction is correct.  Defendant does not dispute that "elliptic curve operations involve conducting finite field operations," and instead argues that this is irrelevant. Dkt. 86 at 6.  Defendant is wrong.  As the Court held, the patents teach that "an elliptic curve point consists of two finite field elements," and "[t]o carry out calculations involving points on the elliptic curve, calculations are done in the underlying finite field[.]"  Dkt. 80 at 32 (quoting '960 Pat. at 7:48-49, 1:47-49).  The patents also teach that "[e]ach elliptic curve operation … requires certain finite field operations."  *Id*. (quoting '960 Pat. at 7:26-27). Contrary to this intrinsic evidence, Defendant's construction limits "finite field operations" only to those operations where "each operand" (a term not used in the patents) is single "finite field element," which excludes operations on elliptic curve points (which are not single finite field elements but rather a *pair* of them).  Dkt. 65 at 6-7.  The Court's conclusion that Defendant's construction is "incorrect" for "exclude[ing] operations on elliptic curve points" and "limit[ing] the claim term to one finite field element per operand" is supported by the intrinsic record.

### E.    "reduced result" ('062 Patent; '960 Patent)

| Defendant's Constructions | Court's Construction |
|---|---|
| No construction needed. Plain and ordinary meaning. | Plain-and-ordinary meaning. |

MARA did not object to the Court's construction of this term.

### F.    "unreduced result" ('062 Patent; '960 Patent)

| Defendant's Constructions | Court's Construction |
|---|---|
| "result without any reduction to a specific finite field or wordsize reduction" | "result without any reduction to a specific finite field or wordsize reduction" |

MARA did not object to the Court's construction of this term.

G.      **"the electronic message omits a public key of a signer"** ('370 patent)

| Defendant's Construction | Court's Construction |
| --- | --- |
| "the electronic message does not include any representation of the public key of the signer" | Plain-and-ordinary meaning. |

The Court's determination that Defendant "does not identify any disclosure in the specification for" replacing "public key" with "any representation of the public key" is accurate. Defendant does not dispute that the specification does not discuss omitting anything other than the public key itself, Dkt. 53 at 21; Dkt. 65 at 9, or that the phrase "any representation of the public key" is nowhere in the intrinsic record. *See* Dkt. 80 at 39. The Court is also correct that Defendant's construction excludes embodiments in which, as taught by the specification, a "compact version" of the public key Q is communicated instead of the public key Q. Dkt. 80 at 43; '370 Patent at 16:22–27. Defendant does not dispute this, arguing only that such embodiments are "not relevant to the claims." Dkt. 86 at 7. Defendant is wrong. Its construction would prohibit embodiments that include sending a "compact version" of the public key, as taught by the patent. *See* '370 Patent at 16:22–27. The Court's determination that Defendant's construction would "vitiate the claim language that requires receiving signature (r, s)" is also correct. Dkt. 80 at 43-44. Defendant argued that a "representation of the public key Q" encompasses things that "can be *used to compute the public key Q*." Dkt. 52 at 26 (emphasis added). Defendant also acknowledged that "the claimed recovery equation *computes Q using the signature (r,s)*." Dkt. 59 at 11 (emphasis added). As the Court concluded, under Defendant's interpretation, the "[s]ignature (r,s) could be considered to be a representation of the public key" and therefore "would have to be omitted," even though the claim requires it to be sent. Dkt. 80 at 43-44. The brokenness of Defendant's construction is no fault of the Court, and the Court was right to reject it.

6

**H.** **"verifying that the second elliptic curve point Q represents the public key of the signer" ('827 patent)**

| Defendant's Construction | Court's Construction |
|---|---|
| "verifying that the second elliptic curve point Q represents the second elliptic curve point Q" | Plain-and-ordinary meaning. |

Defendant identifies no error in the Court's construction. The Court held that there is no basis in the law for rewriting claim 2 as Defendant proposes. Dkt. 86 at 56-47. The Court's citation to *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004) is apropos. Defendant's construction replaces "the public key of the signer" in claim 2 with "the second elliptic curve point Q" of claim 1 because, in Defendant's view, they are the same thing. Dkt. 86 at 8; Dkt. 59 at 12. Without endorsing it, the Court found that "even if" Defendant's interpretation was correct, it would be unnecessary to replace the words of claim 2 with different words that (in Defendant's view) mean the same thing—*i.e.*, to perform the very type of "rephrasing" or "paraphrasing" that *C.R. Bard* held "does not represent genuine claim construction" Dkt. 80 at 47.

Defendant's appeal to *O2 Micro* is misplaced. The Court did not leave a dispute about the plain and ordinary meaning of this term undecided. Defendant asserts that "[its] construction reflects its understanding of the plain and ordinary meaning of claim 2 as written," but the Court rejected Defendant's interpretation. Dkt. 80. Instead, the Court found that the term should be construed according to its plain and ordinary meaning as written—not as rewritten by Defendant. *Id.* Claim 2 as written is consistent with claim 1, which requires both (i) "the public key of the signer comprises a second elliptic curve point Q" and, separately, (ii) "generating the public key of the signer comprises computing $Q = r^{-1}(sR - eG)$." Dkt. 65 at 11 (quoting '827 patent, claim 1). Claim 2 then claims verifying that (i) represents (ii). *Id.* Defendant's interpretation reads out this requirement.

7

### I.    "random number generator" ('961 patent)

| Defendant's Construction | Court's Construction |
|---|---|
| "a system or algorithm that generates a random value" | "a system or algorithm that generates values according to a uniform random probability distribution" |

The Court's construction is correct. Defendant's assertion that the Court improperly weighed the intrinsic evidence is wrong. The Court held that its construction is supported by the specification's description of a "random number generator," finding that description to be "entirely consistent with the outputs of both true RNGs and PRNGs." Dkt. 80 at 54. Defendant does not object to this finding. Instead, Defendant argues that the Order did not "give proper weight" to language in dependent claim 7, which Defendant characterizes as "clearly distinguish[ing] between 'random number generators' and 'deterministic functions' (*i.e.*, pseudorandom number generators)." Dkt. 86 at 9. The Court considered claim 7 but disagreed with Defendant's interpretation of its effect on claim 1. The Court held that because "deterministic" in claim 7 modifies "function" rather than "random number generator," and because claim 1 does not limit "random number generator to true or deterministic RNGs, "claim 1 covers both true RNGs and PRNGs." Dkt. 80. There is no error in the Court's reasoning.

Because the intrinsic record supports the Court's construction, Defendant's objections to extrinsic evidence are moot. But they are also incorrect. Defendant does not object to the Court's reliance on (or the correctness of) the Handbook of Applied Cryptography's statement that "random numbers" include "pseudorandom numbers which are unpredictable to an adversary," which strongly supports the Court's conclusion. Dkt. 86 at 9. Nor does Defendant object to the Court's conclusion that "PRNGs can have unpredictable outputs." Dkt. 80 at 57 (citing Handbook of Applied Cryptography); *see also id.* (citing both parties' experts for the proposition that "the outputs of PRNGs can appear to be random or unpredictable"). Instead, Defendant

8

mischaracterizes the Court's conclusion to raise an irrelevant point about "truly random seeds"—

Defendant's proposed construction says nothing about seeds.  Thus, the Court committed no error.

Nor was the Court's reliance on Defendant's expert's textbook erroneous.  The extrinsic

evidence Defendant objects to is consistent with the intrinsic record, making Defendant's objection

irrelevant.

### J.      "seed" ('961 patent)

| Defendant's Construction | Plaintiffs' Construction |
| --- | --- |
| "a random value that is used as the starting value for a cryptographic key generation function" | "a value obtained from a random number generator that is used to as the starting value for a cryptographic key generation function" |

Defendant raises no independent objections to the Court's construction of "seed," arguing

only that it should be modified for the same reasons Defendant gave for "random number

generator."  Dkt. 86 at 10.  Accordingly, for the reasons explained above with respect to "random

number generator," the Court's construction of "seed" is also correct.

### K.      "The method of claim 1 wherein if said output is rejected, said output is incremented by a deterministic function and a hash function is performed on said incremented output to produce a new output; a determination being made as to whether said new output is acceptable as a key." ('961 patent)

| Defendant's Construction | Plaintiffs' Construction |
| --- | --- |
| Indefinite | Not indefinite. |

The Court correctly held that claim 7 is not indefinite.[6]  Defendant's assertion that there is

no intrinsic record support for the Court's conclusion is wrong.  In particular, the Court analyzed

the claim language itself and the specification (*e.g.*, Fig. 3), both of which support the Court's

conclusion of no indefiniteness.  Dkt. 80 at 67-68.  The Court also cited Plaintiffs' discussion of

---

[6] Defendant's assertion that Plaintiffs "did not dispute … that claim 7 is indefinite if the claim requires 'repeating said method' of claim 1 and performing the additional steps of claim 7" (a) is not an objection, and thus is improper, and (b) is wrong.  As the Court held, claim 7 adds further limitations to steps [a] to [c] of claim 1 when they are repeated.  Dkt. 80 at 67-68.

intrinsic evidence, which further supports the Court's finding.  Dkt. 80 at 67 (citing Dkt. 53 at 33 (discussing '961 Pat., 4:50-52, 4:18-31, Fig. 3)).

Defendant's objection that "the Order does not cite any evidence … to support its determination that a 'deterministic function' is a particular type of RNG," Dkt. 86 at 11, ignores the evidence that the Court considered and summarized in the Order, which supports the Court's conclusion.  *See* Dkt. 80 at 66-67.  Such evidence demonstrates that a deterministic function is a type of RNG, namely a PRNG, and is fully consistent with the intrinsic record.  *Id.* (citing Dkt. 65 at 16 (in turn citing Dkt. 59-3 at 125:25-127:22)); *see* § II.I. ("random number generator"), *supra*.

Defendant also argues that the Court's analyses regarding claim 7 and the "random number generator" term are inconsistent.  Not true.  The Court correctly found that the "random number generators" include two types of RNGs – true RNG and pseudo RNG (or PRNG).  Dkt. 80 at 54-55 ("'deterministic RNGs,' *i.e.*, PRNGs, are a class of RNG").  The Court also correctly found that PRNGs use "deterministic functions" to generate pseudo random numbers.  *Id.*  Thus, the Court's statement that the term "deterministic" in Claim 7 describes a type of "function" (*i.e.*, "deterministic function") and not "a type of 'random number generator,'" is fully consistent with its finding that "Claim 7 requires using a particular RNG ('deterministic function') to generate a new seed value…."

## III.   CONCLUSION

For the foregoing reasons, the Court should overrule Defendant's objections.

10

Dated: April 8, 2026

Respectfully Submitted,

/s/ Philip J. Eklem
Philip J. Eklem
**REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP**
1909 K Street NW, Suite 800
Washington DC, 20006
Tel: (202) 894-7310
peklem@reichmanjorgensen.com

Khue V. Hoang
Patrick Colsher
**REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP**
650 Fifth Avenue, Suite 2320
New York, NY 10019
Tel: (212) 381-1965
khoang@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com

Matthew G. Berkowitz
Michael M. Polka
Michael Caulkins
**REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
mpolka@reichmanjorgensen.com
mcaulkins@reichmanjorgensen.com

*Of Counsel*:

Mark D. Siegmund, TX Bar No. 24117055
**Cherry Johnson Siegmund James, PC**
7901 Fish Pond Rd., 2nd Floor
Waco, TX 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
Email: msiegmund@cjsjlaw.com

*Attorneys for Plaintiffs
Malikie Innovations, Ltd. and
Key Patent Innovations, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on April 8, 2026.

/s/ Mark D. Siegmund

Mark D. Siegmund